UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JENNIFER BARKER AND SABREE HUTCHINSON,
Individually and on Behalf of All Others Similarly Situated                              PLAINTIFFS

v.                                                                  CIVIL ACTION NO. 3:12CV-372-S

PATRICK COLLINS, INC., et al.                                                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court for consideration of a number of motions. The plaintiffs, Jennifer Barker and Sabree Hutchinson, individually and on behalf of all others similarly situated, have moved for leave to take limited discovery prior to a Rule 26 planning meeting in this case. DN 19.[1] The defendants objected to the motion, and also filed a motion to strike certain language in the plaintiffs' reply brief as scandalous or impertinent. DN 25.

Barker and Hutchinson have brought suit against five companies, Patrick Collins, Inc., Malibu Media, LLC, Raw Films, Ltd., K-Beech, Inc., and Third Degree Films, who allegedly are pornography distributors. Patrick Collins, Malibu Media, K-Beech and Third Degree Films are all alleged to be California corporations or LLCs. Raw Films is allegedly a British company. The plaintiffs claim that the defendants have obtained their contact information and demanded that they

---

[1] The defendants, Patrick Collins, Inc, Malibu Media, LLC, K-Beech, Inc., and Third Degree Films, Inc., have filed a motion to dismiss the complaint on the grounds of lack of standing, lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim upon which relief may be granted. DN 15. Defendant Raw Films, Ltd. did not join in the motion. The court entered an agreed order permitting the plaintiffs to respond to the motion to dismiss within ten days of the date of entry of an order overruling plaintiffs' motion for limited discovery, should the court enter such an order. DN 21. Therefore, the motion to dismiss is not presently before the court for decision.

pay money in settlement of a claim of copyright infringement for allegedly illegally downloading the defendants' protected pornographic materials using file sharing technology such as BitTorrent.

In order to identify the purported infringers, the defendants allegedly hired Intellectual Property Protection, Ltd. ("IPP"), a British company, to monitor certain websites and Internet locations for BitTorrent activity. It is alleged that once an IP address was identified as utilizing BitTorrent to download files, the IP address was recorded and forwarded to the plaintiffs. The plaintiffs claim that the defendants have joined together and filed "bill of discovery" lawsuits in the Florida state courts in which they have obtained "mass subpoenas" issued for the Internet service providers associated with the harvested IP addresses to obtain the names and addresses of individuals associated with the IP addresses.

The plaintiffs claim that the demands for money in settlement from them, and from others similarly situated, were fraudulent and coercive, harassing them to pay or be publicly exposed as downloaders of pornography. The plaintiffs contend that the defendants had no proof that the plaintiffs downloaded any of the defendants' materials.

The plaintiffs allege violation of the federal Racketeer Influenced and Corrupt Practices Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Count I); common law fraud (Count II); common law defamation (Count III); intentional infliction of emotional distress (Count IV); unjust enrichment (Count V); violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; (Count VII); and a claim entitled "Defendants' [sic] do not have Valid, enforceable Copyrights

(Fraud)" (Count VI)[2]  The plaintiffs seek punitive damages (Count VIII), and seek to be named as class representatives.

We first address the defendants' motion to strike certain language from the plaintiffs' reply brief.

The defendants take issue with two statements made in the plaintiffs' reply brief on early discovery(DN 24).  First, the defendants take offense at the plaintiffs' statement that "Obviously, counsel for the Defendants are not Biblical scholars."  The defendants' counsel states that he considers this statement to impugn his religious upbringing and religious education.  The plaintiffs have agreed to the striking of this statement.  Therefore, we will not address it further.

Second, the defendants take umbrage at the characterization by the plaintiffs of the defendants' use of "pure bill of discovery" lawsuits in Florida and "'reverse' federal class action lawsuits"[3] as a "bastardiz[ation] of the litigation process."

The defendants contend that the use of the term "bastardize" is "cursing," and (1) is crass and undignified language which does not belong in the federal courts; (2) impugns the character of the defendants; and (3) calls into question the wisdom and good reputation of judges who have ruled favorably to the defendants in such cases.  (DN 25).

The United States Supreme Court has used the term "bastardize" in a number of opinions. It appears in the landmark *Dred Scott Decision*, 60 U.S. (19 How.) 393, 15 L.Ed. 691 (1856)  in which it was held that United States citizenship could be afforded to emancipated slaves only by

---

[2] It is unclear what the plaintiffs allege in this claim.  It appears to be a claim challenging the validity of the defendants' copyrights.  They cite no statutory authority under which they make this claim, nor do they appear to seek declaratory relief. However, the viability of plaintiffs' claims is not presently before the court.

[3] These descriptors are used as terms of art by the plaintiffs.  Their definitions are immaterial to this opinion.

constitutional amendment. Individuals of African descent, brought to the United States as slaves, were then "property" under the law, and not contemplated by the founding fathers as persons entitled to the rights of citizenship. The Court in *Dred Scott* noted that, in a state which prohibited slavery, Scott and his wife had been validly married, and that no person could "assert title to the married persons as slaves, and thus destroy the obligation of the contract of marriage and bastardize their issue, and reduce them to slavery." 60 U.S. at 601.

The term "bastardize" is used in the *Dred Scott Decision* in the literal sense of "bastardy," meaning illegitimate issue. The origin of the term "bastard" is Old French from *fils de bast,* meaning "child of a packsaddle." The term's history indicates that the phrase refers to the "unsanctified circumstances in which the child was conceived. Travelers used packsaddles as beds...The word *bastard* was formed in Old French from *bast,* "packsaddle," and the pejorative suffix - *ard*." Websters II New Riverside University Dictionary (Riverside Publ. 1994).

The term "bastardize" had been used in a Supreme Court decision eighteen years earlier in the case of *The State of Rhode Island and Providence Plantations v. The Commonwealth of Massachusetts*, 37 U.S. (12 Pet.) 657, 9 L.Ed. 1233 (1838). The term was used in that case with an entirely different (and, significantly, non-pejorative) connotation. The case involved a boundary dispute between two states. In the course of the opinion, the Court took note of the principles underlying the colonial acquisition of land, and, after independence was declared, the inviolability of these land titles. Stating that the inviolability of these titles was the "doctrine of the patriots of the revolution," the Court remarked that inviolable title to land by a sovereign state necessarily included the power to maintain that title or to abandon it. The court stated, "To maintain that it was inviolable by the crown, was the doctrine of the patriots of the revolution; but to deny them the

power of abrogating, dissolving, annihilating it, is to bastardize the revolution itself." 37 U.S. at 682.

The use of the term "bastardize" in the context of the *Rhode Island* case was not in a pejorative sense, but rather indicated a corruption or debasement of a principle. Websters II, *supra.*

Similarly, the term "bastardize" was not used pejoratively, but rather in an allegorical sense, in a case from this Circuit. *Rehm v. Interstate Motor Freight System*, 133 F.2d 154, 157 (6th Cir. 1943("It is not the function of a Federal court either to legitimatize, or to bastardize, the brainchildren of state courts in diversity of citizenship cases.").

Thus, the court finds no ground upon which to conclude that the particular use of the term "bastardize" by plaintiffs in their brief was impertinent, scandalous, or otherwise improper.

Finally, to the extent that the defendants take issue with the vehemence with which the plaintiffs state their opposition, we note that the defendants, alleged pornography distributors, rely heavily upon the protections of the 1st Amendment to engage in their business. To strike the term "bastardize" on the ground that it offends the sensibilities of these defendants would be, in this court's view, somewhat ironic. The motion to strike certain terminology in the plaintiff's reply brief (DN 25) is **DENIED.**

The defendants[4] filed a motion to dismiss (DN 15) on numerous grounds. The plaintiffs have not filed a responsive brief, but rather seek early limited discovery purportedly to determine "the extent to which the defendants do business in Kentucky through their websites."  (DN 19-1, p. 5), in order to respond to the allegation that the court lacks personal jurisdiction over them.

---

[4]With the exception of Raw Films, Ltd. (see fn. 1).  It appears that Raw Films may not have been served.  *See* DN 15-1, p. 1, fn. 1.

In opposing a motion to dismiss, the plaintiffs bear the burden of establishing personal jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (*citing Nationwide Mut'l Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996)). While the district court may hold an evidentiary hearing to determine whether or not jurisdiction exists, it need not do so. Where no hearing is held, a plaintiff "need only make a prima facie showing of jurisdiction," *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996), establishing the necessary facts with "reasonable particularity." *Neogen*, 282 F.3d at 887 (*quoting Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Without a hearing the court may not "consider facts proffered by the defendant that conflict with those offered by the plaintiff," *id.* (*citing Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)), and "must consider the pleadings and affidavits in a light most favorable to the plaintiff," *Compuserve*, 89 F.3d at 1262 (*citing Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

As this court stated in *Envirometric Process Controls, Inc. v. Adman Electric, Inc.*, No. 3:12CV-62, 2012 WL 4023789 (W.D. Ky. Sept. 12, 2012), a federal district court can exercise jurisdiction over any person subject to the jurisdiction of the state in which it sits. *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 148 (6th Cir. 1997). In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Due Process Clause imposes constitutional restrictions on the court's jurisdiction. Kentucky's long-arm statute, KRS 454.210, has been interpreted, until recently, as reaching "the outer limits of the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution." *See, Cummings v. Pitman*, 239

S.W.3d 77, 84 (Ky. 2007), *overruled, Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.2d 51 (Ky. 2011))(*citing Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405 (Ky.App. 1984)).

> The Kentucky Supreme Court has refined this inquiry into personal jurisdiction:
>
> [T]he proper analysis of long-arm jurisdiction over a nonresident defendant must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights.

*Caesars*, 336 S.W.3d at 57.

The Supreme Court of Kentucky held in *Caesars* that a defendant's activities must fit into one of the nine provisions of the Kentucky long-arm statute in order for *in personam* jurisdiction to be exercised. *Id.* The court clarified that the long-arm statute is not, *per se*, coextensive with the limits of federal due process. *Id.* at 56.

In their own words, the plaintiffs seek discovery to determine "the extent to which the defendants do business in Kentucky through their websites." (DN 19-1, p. 5). The plaintiffs allege that they received phone calls from the defendants' agent in California attempting to extort money from them.

The defendants deny that they regularly do or solicit business in Kentucky, or engage in other persistent conduct in Kentucky or derive substantial revenue from Kentucky. *(See* Declarations in Support of Mo. to Dismiss). The plaintiffs need not accept the averments offered by defendants at face value, of course. They seek to test the defendants' assertions through limited discovery. However, in the context of this motion addressed to the question of personal jurisdiction,

the plaintiffs may only "obtain discovery regarding any nonprivileged matter that is relevant to any party's...defense..." Fed.R.Civ.P. 26(b)(1).

Assuming *arguendo* that the discovery plaintiffs seek revealed that the defendants, in fact, conduct significant business with Kentucky residents through their Internet websites, only the first part of the relevance test would be met. The plaintiffs have not shown that such evidence would go toward establishing that their claims "arise from" or "arise out of" the doing of such Internet business, as required under the Kentucky long-arm statute and current caselaw. *See Envirometric Process*, *supra*. at \*\*3-4. There is no connection apparent to this court between pornography sales through websites, even those, arguably, accessed on a regular basis by Kentucky residents, and the purported extortionate acts alleged to have been committed against the plaintiffs in this action. Thus the discovery the plaintiffs seek has not been shown to be relevant or reasonably calculated to lead to the discovery of relevant evidence in establishing personal jurisdiction over the defendants.

Indeed, the plaintiffs urge that *Caesars* is actually inapplicable to the jurisdictional analysis in this case. They contend that business contacts are not necessary to establish jurisdiction over the defendants. Rather, they urge that the tort was committed within Kentucky:

> [T]he Defendants committed tortious acts within the state of Kentucky, and therefore, they are subject to personal jurisdiction here. Their shakedown of the Plaintiffs occurred in Kentucky. Ms. Barker was defamed by Malibu Media and/or its agents in Kentucky. Ms. Hutchinson was extorted by K-Beech and/or its agents in Kentucky. The plaintiffs' complained of injuries occurred in Kentucky.

Reply Brief, pp. 4-5.

The plaintiffs contend that the defendants committed tortious acts within the state of Kentucky and therefore fall within KRS 454.210(2)(a)(3). Subsection (a)(3) states that "A court may exercise personal jurisdiction over a person...as to a claim arising from the person's...[c]ausing

tortious injury by an act or omission in this Commonwealth." However, we are mindful of the distinction between causing an injury in Kentucky and causing a consequence in Kentucky by an act committed outside of Kentucky. *See Pierce v. Serafin*, 787 S.W.2d 705 Ky.App. 1990) (mailing an allegedly tortious letter into Kentucky from outside the forum did not constitute an act in the Commonwealth under (a)(3), despite, presumably, that such mail *caused a consequence* in Kentucky. *Id.* at 706; Subsection (a)(4) ("causing a tortious injury in this Commonwealth by an act or omission outside this Commonwealth") would be completely obviated as every set of facts which gave rise to tortious injury could be brought within the terms of paragraph three (3)."). *See also, Thompson v. Koko*, No. 3:11CV-648-H, 2012 WL 374054 (W.D.Ky. Feb. 3, 2012)(a post-*Caesars* case in which court found (a)(3) inapplicable, citing *Pierce* and *Spectrum Scan, LLC v. AGM California*, 519 F.Supp.2d 655 (W.D.Ky. 2007)); *Caesars*, 336 S.W.3d at 56 ("It is fundamental that in determining the meaning of a statute, we must defer to the language of the statute and are not at liberty to add or subtract from the legislative enactment or interpret it at variance from the language used."). The plaintiffs did not address this line of reasoning in reply to the opposition to their motion for limited discovery.

In summary, the plaintiffs claim that the defendants obtained subpoenas in Florida to discover information leading to the identification of their IP addresses. They contend that they were then contacted by telephone by an agent of the defendants located in California concerning their purported illegal downloading of pornographic materials. The plaintiff have not shown that any fruits of discovery concerning the defendants' Internet sales to Kentucky buyers would assist the plaintiffs in establishing the requisite nexus between such business activities and the plaintiffs' claims of extortion by telephone, as would be required to satisfy the Kentucky long-arm statute.

In *Caesars,* the court stated that

> The reach of Kentucky's long-arm jurisdiction is a policy choice of the General Assembly, limited by federal and state constitutional considerations. KRS 454.210 is the legislature's expression of that policy, and as such, the statute operates independently of federal due process analysis. Thus, we clarify that proper deference to the language of the statute compels that, as an initial step, review is necessary to determine whether long-arm jurisdiction over a foreign defendant is permissible under KRS 454.210.

*Caesars*, 336 S.W.3d at 57.

We conclude that on the briefs before the court, we have not been shown that discovery into the extent to which the defendants do business in Kentucky through their websites would bear upon our jurisdiction over the plaintiffs' claims of extortion, because the extortion claims do not appear to arise from the defendants' web business activities.[5] Therefore, the motion for leave to take limited discovery (DN 19) is **DENIED.**

The completion of the briefing of the motion to dismiss shall be done in accordance with this court's previous order. (DN 21).

**IT IS SO ORDERED.**

July 17, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**

---

[5] This decision should not be construed as a decision on the merits of the motion to dismiss with respect to the exercise of personal jurisdiction over the defendants. The motion to dismiss is not before the court for decision, and the matter has not been addressed by the current papers. We discuss the jurisdictional argument only to the extent necessary to decide whether plaintiffs made their case for limited discovery. Further, the court expresses no opinion concerning personal jurisdiction over the defendants with respect to the federal claims asserted. Additionally, the court expresses no opinion concerning any of the other grounds for dismissal.